IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ATS INTERNATIONAL
SERVICES, INC.

    Plaintiff,

    v.      Civil Action No. RDB-12-2525

KOUSA INTERNATIONAL, LLC, et al.

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This maritime contract dispute was initially filed in this Court relating to the attachment and garnishment against certain cargo in the Port of Baltimore. Plaintiff/Counter-Defendant ATS International Services ("ATS") has filed three separate motions for various forms of relief. First, ATS has filed a Motion to Dismiss All Counterclaims (ECF No. 107) filed by Defendant Kousa International, LLC ("Kousa") in its Second Amended Counterclaim (ECF No. 106). Second, ATS has filed a Motion for Sanctions (ECF No. 116) under Rule 11 of the Federal Rules of Civil Procedure. Finally, ATS filed a Motion for Summary Judgment (ECF No. 123), seeking judgment on its one remaining claim as well as summary judgment as a counter-defendant on all of Kousa's counterclaims.[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiff ATS's Motion to Dismiss Counterclaims (ECF No. 107) is generally DENIED, as Kousa has adequately pled

---

[1] The parties have agreed to dismiss Count II of ATS's Amended Complaint for breach of contract related to the "deadfreights," the amount by which Kousa allegedly fell below the minimum annual cargo volume.

1

its counterclaims. In light of the evidence adduced by the parties, however, ATS's Motion for Summary Judgment (ECF No. 123), filed as both a plaintiff and counter-defendant, is GRANTED IN PART AND DENIED IN PART. Specifically, the motion is denied with respect to ATS's claim for breach of contract. Summary judgment is also denied to ATS as a counter-defendant with respect to Kousa's counterclaims for breach of contract for the arrest and/or attachment of its property (Count IV) as well as fraud in the inducement (Count I) and fraud (Count V) to the extent that those claims relate to the later shipments not covered by the 2008 and 2009 Contracts of Affreightment ("COAs"). However, summary judgment is granted to ATS as a counter-defendant on Kousa's counterclaims for reformation (Count II), breach of contract with respect to alleged over-charging (Count III), and fraud in the inducement and fraud (Counts I and V) with respect to the 2008 and 2009 COAs.[2] Finally, ATS's Motion for Sanctions (ECF No. 116) is DENIED.

BACKGROUND

With respect to ATS's Motion to Dismiss Counterclaims, this Court accepts as true the facts alleged in Kousa's Counterclaim. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). With respect to ATS's Motion for Summary Judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to Kousa. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff ATS International Services, Inc. ("ATS") provides international marine logistic services and shipment. Defendant Kousa International, LLC ("Kousa") is involved

---
[2] Kousa's counterclaims for tortious interference with contract (Count VI) and tortious interference with prospective business advantage (Count VII) are dismissed without prejudice by consent of Kousa.

2

in the wind energy business. The underlying dispute that gave rise to this litigation involved the shipment of tubular steel towers for Kousa. Kousa purchased these towers from Korindo Heavy Industry and needed to ship them from Indonesia to various ports around the world for resale to Kousa's customers. For the transactions at issue, ATS arranged for shipment of the towers on ships owned or operated by third parties including PACC Container Line Pte. Ltd. ("PACC").

At first, ATS and Kousa arranged for shipment on a case-by-case basis. However, in 2007, ATS and Kousa began to negotiate a contract of affreightment to cover Kousa's shipments of wind towers during 2008 ("the 2008 COA"). The agreement was "made on January 1, 2008" and was effective from January 1 to December 31 of 2008.

The 2008 COA defined the shipping rates to be paid by Kousa as follows: "The freight rate ('Freight Rate') during the Contract Period is as set out in Appendix 1 which rate is applicable for each cubic meter, subject to a minimum of 13000 cbm per sailing." Pl.'s Mot. Summ. J. Ex. A ¶ 5.1 (hereinafter, "2008 COA"), ECF No. 123-2. Appendix I of the 2008 COA—officially titled "ATS/KORINDO APPENDIX I Rev:1 12-14-2007"— articulated specific rates for shipment to various ports. These rates were based upon those in the contract ATS had negotiated with PACC. Kousa's final contract price was based on these ATS-PACC rates plus a commission paid to ATS.[3]

Although no changes were made to the contract between ATS and Kousa, unbeknownst to Kousa, ATS and PACC signed "ADDENDUM NO. 1" to the "CONTRACT OF AFFREIGHTMENT Dated 16 December, 2007." The addendum

---

[3] Specifically, Kousa would pay a three percent (3%) commission to ATS for all ocean carriage and a seven percent (7%) commission for port activities and charges.

3

states that:

> - Effective on voyage 165x Pac Alkaid, PACC will invoice ATS at the rate levels attached as Appendix I, and ATS is to issue a debit note for the amount of 3% of ocean freight. ATS is not to create a debit note for detention.
> - After reaching the first 156,000 cbm, PACC will invoice ATS on the second tier as attached in Appendix I, and ATS is to issue a debit note for 3% of ocean freight and detention (if applicable) and an additional 5% for volume discount for all volumes exceeding the first 156,000 cbm.

*See* Def.'s Resp. Mot. Summ J. Ex A, Ex. 10, ECF No. 128-3. The effect of this amendment was ATS paid less than the original contract price to PACC, effectively increasing its margin. This addendum was not disclosed to Kousa until after the commencement of this litigation.

A second COA between ATS and Kousa ("the 2009 COA"), dated May 21, 2008 and signed by Ricky Seung on May 23, 2008, was executed for the calendar year 2009. The terms of second COA were essentially identical to those of the 2008 COA, but the rates listed in Appendix I were adjusted. Again, ATS subsequently amended its agreement with PACC and created a commission to be paid to ATS.[4] *See* Def.'s Resp. Mot. Summ. J. Exs. H, I, & J.

Following the expiration of the 2009 COA, the parties continued to work together under a series of *ad hoc* arrangements. The relationship continued into 2012, and ATS would invoice Kousa for each individual shipment. By the middle of 2012, several invoices remained unpaid by Kousa.

ATS filed claims in this Court against Kousa under Rules C and D of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions on August 23, 2012 and requested a warrant of arrest and a writ of maritime attachment and

---

[4] The first amendment appears to be "ADDENDUM NO. 2," with an effective date of March 1, 2009. *See* Def.'s Resp. Mot. Summ. J. Ex. H.

garnishment against certain cargo in the Port of Baltimore. After Kousa filed security with this Court, the cargo was released. Kousa filed its original Answer and Counterclaim (ECF No. 34) on September 26, 2012, asserting claims for fraudulent inducement, breach of contract, and tortious interference.

After a long serious of exchanges between the parties and various filings in this Court, ATS filed its Amended Complaint (ECF No. 91) on June 10, 2013. On September 25, 2013, Kousa filed its Second Amended Counterclaim (ECF No. 106) against ATS.

ATS moved to dismiss Kousa's Second Amended Counterclaim on September 25, 2013. *See* Mot. Dismiss Countercl., ECF No. 107. Thereafter, ATS filed its Motion for Sanctions (ECF No. 116) on December 19, 2013. Finally, ATS filed its Motion for Summary Judgment (ECF No. 123) on February 17, 2014.

STANDARD OF REVIEW

I. **Motion to Dismiss Pursuant to Rule 12(b)(6)**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be

alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## II. Motion for Summary Judgment Pursuant to Rule 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is

limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

ANALYSIS

I. **ATS'S MOTION TO DISMISS**

ATS's Motion to Dismiss Counterclaims generally raises the adequacy of Kousa's pleadings. ATS's major contention is that Kousa's claims fail because a significant number of Kousa's allegations are alleged "on information and belief." *See* Pl.'s Mem. Supp. Mot. Dismiss Countercl. 2-8, ECF No. 107-1. In particular, ATS complains that it is improper for Kousa to pursue its counterclaims considering Kousa has already conducted some discovery and still makes it allegations on "information and belief." However, ATS has not identified any controlling legal authority that such pleading is *per se* inadequate. Moreover, Kousa's Counterclaim is replete with factual details supporting its allegations. Accordingly, Kousa's Second Amended Counterclaim will not be dismissed on this basis alone.

ATS also argues that Kousa's counterclaims should be dismissed because they are based on facts revealed during discovery. This issue was previously litigated during Kousa's Motion for Leave to File Second Amended Counterclaim (ECF No. 96) and resolved by this Court's September 16, 2013 Letter Order (ECF No. 105). Accordingly, this argument is also inadequate to warrant dismissal.

ATS's Motion also challenges the sufficiency of each of Kousa's individual counterclaims. For purposes of efficiency, these arguments will be addressed below.

## II. ATS'S MOTION FOR SUMMARY JUDGMENT

### a. ATS's Breach of Contract Claim

ATS's only remaining claim is for breach of contract pertaining to Kousa's alleged failure to pay ATS for amounts owed arising out of various shipments in 2011 and 2012. *See* Pl.'s Am. Compl. ¶¶ 9-12, ECF No. 91. ATS now moves for summary judgment on this claim. ATS argues that it properly invoiced Kousa for various shipments and that Kousa failed to pay. *See* Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 123-1. In opposition, Kousa argues that ATS charged it more than was allowed under the arrangement between the parties. *See* Def.'s Resp Mot. Summ. J. 12, ECF No. 128. Moreover, citing to numerous email exchanges between Kousa and ATS employees, Kousa argues that ATS fraudulently induced Kousa to enter into the agreements with ATS because Kousa understood that it would only pay ATS's actual costs plus a set commission. *See id.* at 13-17. In light of this dispute whether ATS invoiced Kousa for the appropriate amount, ATS's Motion for Summary Judgment as to Count I of its Amended Complaint will be denied.

### b. Kousa's Counterclaim for Fraudulent Inducement of Contract (Count I)

Kousa's first counterclaim asserts fraudulent inducement of contract. The elements of a claim for fraudulent inducement include:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

8

*Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp.2d 505, 525 (D. Md. 2004).

In its Motion to Dismiss, ATS raises the adequacy of Kousa's pleading. Specifically, ATS argues that Kousa has failed to adequately allege that the various statements concerning price were false at the time they were made and were intended to defraud Kousa. *See* Pl.'s Mem. Supp. Mot. Dismiss Countercl. 10-11. However, Kousa's claim alleges that ATS fraudulently induced it into the 2008 COA and that ATS had actually negotiated a lower rate with PACC by means of ADDENDUM No. 1 before ATS and Kousa executed the 2008 COA. *See* Def.'s Sec. Am. Countercl. ¶ 17. Similarly, Kousa alleges that ATS represented that the rates in Appendix I of the 2009 COA were ATS's transparent buy rate. *See id.* ¶ 25. Moreover, Kousa's allegations with respect to intent to defraud are supported by the emails discussing separate billing procedures. Accordingly, Kousa's Second Amended Counterclaim states an adequate claim for fraudulent inducement.

While Kousa's allegations are sufficient to survive ATS's Motion to Dismiss, they are not uniformly borne out by the facts produced in discovery. In particular, Kousa has provided no evidence to support its contention that ATS had negotiated lower rates and/or a commission with PACC *before* the contracts between ATS and Kousa were formalized.[5]

---

[5] ATS and PACC eventually renegotiated the rates for both the 2008 and 2009 COAs. However, ADDENDUM NO. 1 (which affected the 2008 COA) was not dated. The stated effective date of that amendment was the voyage 165x Alkaid, which Kousa asserts was the first voyage subject to the 2008 COA. No evidence has been offered regarding the date of that voyage, and there is affirmative evidence that the amendment to the contract occurred after the 2008 COA was executed. *See* Def.'s Resp. Mot. Summ. J. Ex N 101:12-120 (deposition testimony of Joseph Goering stating that amendment was not disclosed to Kousa because the "contract was already mutually executed").

With respect to the 2009 COA, the evidence clearly demonstrates that the amendments at question occurred after the original COA between ATS and Kousa was signed. Specifically, ADDENDUM NO. 2 to the contract between ATS and PACC (which is the first amendment that the parties have identified with

9

Moreover, there is no evidence that ATS originally planned or intended to renegotiate its contract with PACC when the rates set in the 2008 and 2009 COAs were negotiated and agreed upon. Accordingly, Kousa has not generated a question of material fact regarding its fraudulent inducement claims with respect to the 2008 and 2009 COAs.

However, Kousa also alleges that ATS fraudulently induced it to enter into "other later shipments" not subject to the COAs. With respect to these transactions, Kousa has produced evidence showing that ATS had already renegotiated its contract with PACC in order to receive a commission. *See, e.g.*, Def.'s Resp. Mot. Summ. J. Ex. H, I, & J. In addition, Kousa has presented sufficient evidence to raise questions of material fact regarding ATS's knowledge and intent. *See, e.g., id.* at Ex. D (email from ATS employee referencing plan whereby two invoices would be generated); *id.* at Ex. Z (deposition of David Choi in which Mr. Choi states he repeatedly asked ATS whether ATS was receiving a commission from shippers for its activities related to Kousa). Accordingly, ATS's Motion for Summary Judgment will be denied with respect to the *later* shipments.

### c. Kousa's Counterclaim for Reformation (Count II)

In its second counterclaim, Kousa seeks to reform the 2008 and 2009 COAs. Specifically, Kousa argues that the term "Freight Rate" is ambiguous and should be reformed in accordance with the alleged original intention of the parties—i.e., the actual cost or rate paid by ATS plus the appropriate commission. *See* Sec. Am. Countercl. ¶¶ 59-59.

---

respect to the 2009 COA) states that ATS had been unable to meet its obligations "since January 2009 due to the global financial crisis." *See* Def. Resp. Mot. Summ. J. Ex H.

Because the amendments to ATS's agreement with PACC were not made until after the 2008 and 2009 COAs were executed, there was nothing false about the statements that Kousa was receiving the best rates available at the time.

Under Maryland law, reformation is an equitable remedy that, unlike recession, cancellation, or annulment, allows the "instrument [to] remain[] in force and effect, but in a modified, or changed form." *Housing Equity Corp. v. Joyce*, 265 Md. 570, 580, 290 A.2d 769 (Md. 1972) (quoting *Moyer v. Title Guarantee Company*, 227 Md. 499, 504, 177 A.2d 714 (1962)). The remedy of reformation is only applicable when there is (1) mutual mistake or (2) fraud, duress, or other inequitable conduct. *See Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640 (D. Md. 2010) (quoting *Maryland Port Admin. v. John W. Brawner Contracting Co.*, 303 Md. 44, 59, 492 A.2d 281 (1985)); *Housing Equity Corp. v. Joyce*, 265 Md. 570, 580, 290 A.2d 769, 774 (1972) ("Equity will reform a written document when and only when there is a mutual mistake of fact or a mistake is made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party."); *see also* 28 Williston on Contracts § 70:209 (4th ed.) ("To obtain reformation of a written instrument, a petitioner must show that the parties came to an understanding but, in reducing it to writing and through some mutual mistake (or through a mistake on one side and fraud on other), either omitted some provision agreed on or inserted one not agreed on. Reformation is only a mechanism to interject into writings those terms or provisions that the parties have agreed on."); *cf. Dulany v. Rogers*, 50 Md. 524, 533 (1879) ("A mistake on one side may be ground for rescinding, but not for reforming a written agreement.").

In this case, Kousa has not established any valid claim for reformation. As discussed above, Kousa's counterclaims for fraud in the inducement fail with respect to the 2008 and 2009 COAs. Nor has Kousa argued that the 2008 and 2009 COAs were the result of a

11

mutual mistake. Accordingly, ATS's Motion for Summary Judgment will be granted with respect to Count II of Kousa's Second Amended Counterclaim.[6]

### d. Kousa's Counterclaim for Breach of Contract Arising out of ATS's Alleged Over-Charging (Count III)

Kousa's third counterclaim asserts a breach of contract by ATS arising out of ATS's alleged overcharging on shipments covered by the 2008 and 2009 COAs. *See* Def. Sec. Am. Countercl. ¶ 61. The 2008 and 2009 COAs contained express rate schedules in the appendices. The agreements unambiguously defined the "freight rate" as those rates. Kousa has not adduced any evidence to show that it was charged a rate higher than those specified rates. Accordingly, ATS's Motion for Summary Judgment will be granted with respect to Count III of Kousa's Second Amended Counterclaim.[7]

### e. Kousa's Counterclaim for Breach of Contract Arising out of ATS's Arresting and Attaching Kousa's Property (Count IV)

In its fourth counterclaim, Kousa asserts that ATS breached the agreements between the parties when it arrested and attached property belonging to Kousa. In its Motion to Dismiss Counterclaims, ATS argues that Kousa has failed to identify any contractual obligation in the COAs that was breached. *See* Pl.'s Mot. Dismiss Countercl. 13-14. In its summary judgment motion, however, ATS correctly points out that the claim pertains to transactions occurring after the expiration of the 2008 and 2009 COA. *See* Pl.'s Mem. Supp. Mot. Summ. J. 21-22. ATS argues that its actions were permissible nevertheless because ATS merely exercised its rights under 28 U.S.C. §§ 1330 and 1333, Supplemental Rules B, C,

---

[6] Because this Court will enter judgment in favor of ATS with respect to Kousa's second counterclaim, it sees no reason to address ATS's Motion to Dismiss with respect to that claim.
[7] Because this Court will enter judgment in favor of ATS with respect to Kousa's third counterclaim, it sees no reason to address ATS's Motion to Dismiss with respect to that claim.

and D, and Federal Rule of Civil Procedure 9(h). *See id.* In response, Kousa argues that the terms of the 2009 COA were extended through 2012 and that the parties had orally modified the schedule for payment. *See* Def.'s Resp. Mot. Summ. J. 29-30. In support of this position, Kousa offers a series of emails between Ricky Seung and Joe Goering referencing a revised payment structure. *See* Def.'s Resp. Mot. Summ. J. Ex. A, Exs. 23-26.[8] In light of these emails, Kousa has raised a question of material fact as to the terms of the agreements—specifically as to the timing of payment and ATS's remedies for late payment. As such, Kousa's counterclaim is adequate to survive ATS's motions.

### f. Kousa's Counterclaim for Intentional Misrepresentation/Fraud (Count V)

Kousa's fifth counterclaim asserts that ATS "intentionally and repeatedly misrepresented the rates it paid for port activities and the rate that it intended to charge Kousa for port activities." Def.'s Sec. Am. Countercl. ¶ 71. Under Maryland law, the elements for a claim of fraud or intentional misrepresentation are:

> (1) That the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

---

[8] Specifically, these exhibits suggest that Rick Seung reached out to ATS to arrange revised payment terms on June 17, 2010. Def.'s Resp. Mot. Summ. J. Ex. A, Ex. 23, at 1, ECF No. 128-3. Subsequently, Joe Goering emailed Rick Seung requesting a payment significant enough "to get us where we agreed" although Goering did not explicitly describe the terms of that agreement. Def.'s Resp. Mot. Summ. J. Ex. A, Ex. 26, at 1, ECF No. 128-3.

13

*SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 590 (D. Md. 2002) (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038, 1047 (1995) (internal citations omitted).

With respect to its Motion to Dismiss, ATS again challenges the sufficiency of the pleadings under *Iqbal* and *Twombly* and Rules 8 and 9. Just as with Count I, this Court does not find ATS's arguments to be persuasive, and the Motion to Dismiss will be denied.

In its summary judgment motion, ATS argues that it cannot be held liable for fraud because it never charged Kousa more than the rates expressly stated in the contracts. Nevertheless, Kousa contends that ATS repeatedly represented that ATS would only charge its actual costs plus commission, and Kousa has adduced evidence suggesting that ATS intentionally misled Kousa with respect to the actual costs of shipping that ATS paid. *See* Def.'s Resp. Mot Summ. J. 30-34 (summarizing emails and other documentary evidence suggesting that ATS billed Kousa at a cost that was higher than ATS paid); Def.'s Resp. Mot. Summ. J. Ex D, ECF No. 128-6 (email from ATS employee, with accompanying invoices, that suggested two copies of each invoice were required); Def.'s Resp. Mot. Summ. J. Ex Z, ECF No. 128-28 (deposition testimony of David Choi suggesting that Joe Goering repeatedly assured Mr. Choi that ATS was not receiving any booking commission from PAC in various oral conversations).

With respect to transactions covered by the 2008 and 2009 COA, Kousa's claims fail. Specifically, Kousa has not produced sufficient evidence to raise a question with respect to damages; regardless of whether ATS received an undisclosed commission, Kousa was obligated to pay the scheduled rate under the 2008 and 2009 COAs. Moreover, this Court's

conclusions with respect to the falsity of the statements in connection to Kousa's fraudulent inducement claim are equally applicable here.

With respect to transactions outside the scope of the 2008 and 2009 COAs, however, Kousa has successfully generated questions of material fact. Kousa has presented evidence that ATS repeatedly represented that it was passing through its actual costs to Kousa and that ATS created separate invoices to obfuscate the fact that it was receiving a commission from PACC. As a result, Kousa paid more than it was willing for those shipments. Accordingly, Kousa's fifth counterclaim survives ATS's Motion for Summary Judgment with respect to transactions outside the scope of the 2008 and 2009 COAs.

### g. Kousa's Counterclaims for Tortious Interference (Counts VI and VII)

Kousa's sixth counterclaim asserts a claim for tortious interference with contract, while its seventh counterclaim alleges tortious interference with prospective business advantage. In accordance with Kousa's repeated requests, this Court will dismiss these claims without prejudice.[9]

## III. ATS'S MOTION FOR SANCTIONS

ATS contends that this Court should impose sanctions on Kousa pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) states in part that:

> By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, . . . (2) the claims, defenses, and other legal contentions are warranted by existing law, . . . (3) the factual contentions have [or will have] evidentiary support, . . . and (4) the denials of factual

---

[9] Despite Kousa's willingness to dismiss these claims, ATS has pressed for judgment on these counterclaims.

> contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

In the Fourth Circuit, sanctions are imposed for "maintaining a legal position to a court . . . when, in 'applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)). The way in which a claim is pled does not bear on Rule 11 sanctions; only the absence of any basis, legal or factual, is sanctionable. *Id.* at 153 (citation omitted). Nor does Rule 11 require that a claim be proven before a complaint is filed. *Id.* Instead, Rule 11 attempts only to discourage wasteful filing of "groundless lawsuits." *Id.* Where a party violates Rule 11(b), Rule 11(c) allows the court to impose sanctions which may include awarding "the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." FED. R. CIV. PRO. 11(c)(1)-(2). Consequently, the "imposition of sanctions is discretionary with the Court, not mandatory." *Thomas v. Treasury Mgmt. Assoc.*, 158 F.R.D. 364, 369 (D. Md. 1994) (citing *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). Moreover, it is well-established in this Court that sanctions should be imposed sparingly. *Id.* at 366.

ATS's Motion for Sanctions is premised upon Kousa's reliance upon allegations made on "information and belief" and an alleged improper use of discovery—in essence, the same arguments raised in its Motion to Dismiss. As discussed above, those general, overarching arguments were inadequate to warrant dismissal. Therefore, they are also inadequate to warrant sanctions under Rule 11 of the Federal Rules of Civil Procedure.

CONCLUSION

For the reasons stated above, Plaintiff ATS's Motion to Dismiss Counterclaims (ECF No. 107) is generally DENIED, as Kousa has adequately pled its counterclaims. In light of the evidence adduced by the parties, however, ATS's Motion for Summary Judgment (ECF No. 123), filed as both a plaintiff and counter-defendant, is GRANTED IN PART AND DENIED IN PART. Specifically, the motion is denied with respect to ATS's claim for breach of contract. Summary judgment is also denied to ATS as a counter-defendant with respect to Kousa's counterclaims for breach of contract for the arrest and/or attachment of its property (Count IV) as well as fraud in the inducement (Count I) and fraud (Count V) to the extent that those claims relate to the later shipments not covered by the 2008 and 2009 Contracts of Affreightment ("COAs"). However, summary judgment is granted to ATS as a counter-defendant on Kousa's counterclaims for reformation (Count II), breach of contract with respect to alleged over-charging (Count III), and fraud in the inducement and fraud (Counts I and V) with respect to the 2008 and 2009 COAs.[10] Finally, ATS's Motion for Sanctions (ECF No. 116) is DENIED.

A separate Order follows.

Dated: April 10, 2014  \_\_\_\_/s/_____
Richard D. Bennett
United States District Judge

---

[10] Kousa's counterclaims for tortious interference with contract (Count VI) and tortious interference with prospective business advantage (Count VII) are dismissed without prejudice.