IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ATS INTERNATIONAL SERVICES, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-2525 |
| KOUSA INTERNATIONAL, LLC, et al. | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This case arises out of a series of shipping contracts between ATS International Services, Inc. ("ATS") and Kousa International, LLC ("Kousa").  ATS has alleged that Kousa failed to pay for ATS's services, and ATS filed suit in order to attach certain property of Kousa's located in this district.  Thereafter, Kousa filed several counter-claims.  On April 10, 2014, this Court granted summary judgment to ATS on several of Kousa's counterclaims.  Of particular relevance at this time, this Court granted summary judgment to ATS with respect to Kousa's first counterclaim for fraudulent inducement of contact to the extent that that claim related to certain written agreements between the parties; however, this Court denied summary judgment with respect to later shipments not covered by the written agreements.  Kousa now moves this Court to reconsider its order granting summary judgment on the fraudulent inducement claim as to the written agreements.  The parties' submissions have been reviewed, and this Court held a hearing on the Motion on April 28,

2014. For the reasons that follow, Defendant Kousa's Motion for Reconsideration (ECF No. 145) is GRANTED.[1]

## BACKGROUND

This Court outlined the facts of this case in some detail in its April 10, 2014, Memorandum Opinion (ECF No. 133); accordingly, only a short summary is provided here.

Plaintiff ATS International Services, Inc. ("ATS") provides international marine logistic services and shipment. Defendant Kousa International, LLC ("Kousa") is involved in the wind energy business. The underlying dispute that gave rise to this litigation involved the shipment of tubular steel towers for Kousa. Kousa purchased these towers from Korindo Heavy Industry and needed to ship them from Indonesia to various ports around the world for resale to Kousa's customers. For the transactions at issue, ATS arranged for shipment of the towers on ships owned or operated by third parties including PACC Container Line Pte. Ltd. ("PACC").

At first, ATS and Kousa arranged for shipment on a case-by-case basis. However, in 2007, ATS and Kousa began to negotiate a contract of affreightment to cover Kousa's shipments of wind towers during 2008 ("the 2008 COA"). The agreement was "made on January 1, 2008" and was effective from January 1 to December 31 of 2008.

The 2008 COA defined the shipping rates to be paid by Kousa, and those rates were based upon the rates ATS had negotiated with PACC. Kousa's final contract price was

---

[1] This Memorandum Opinion serves only to further explain this Court's reasoning as to its ruling on the Motion for Reconsideration. The Motion was previously granted as part of the Pretrial Order (ECF No. 164).

based on these ATS-PACC rates plus a commission paid to ATS.[2]

Although no changes were made to the contract between ATS and Kousa, ATS and PACC signed "ADDENDUM NO. 1" to the "CONTRACT OF AFFREIGHTMENT Dated 16 December, 2007." The addendum states that:

- Effective on voyage 165x Pac Alkaid, PACC will invoice ATS at the rate levels attached as Appendix I, and ATS is to issue a debit note for the amount of 3% of ocean freight. ATS is not to create a debit note for detention.
- After reaching the first 156,000 cbm, PACC will invoice ATS on the second tier as attached in Appendix I, and ATS is to issue a debit note for 3% of ocean freight and detention (if applicable) and an additional 5% for volume discount for all volumes exceeding the first 156,000 cbm.

*See* Def.'s Resp. Mot. Summ J. Ex A, Ex. 10, ECF No. 128-3.  This addendum was not disclosed to Kousa until after the commencement of this litigation.

A second COA between ATS and Kousa ("the 2009 COA"), dated May 21, 2008 and signed by Ricky Seung on May 23, 2008, was executed for the calendar year 2009.  The terms of the second COA were essentially identical to those of the 2008 COA, but the listed rates were adjusted.  Again, ATS subsequently amended its agreement with PACC.

Following the expiration of the 2009 COA, the parties continued to work together under a series of *ad hoc* arrangements.  The relationship continued into 2012, and ATS invoiced Kousa for each individual shipment.  By the middle of 2012, several invoices remained unpaid by Kousa.

ATS filed claims in this Court against Kousa under Rules C and D of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions on

---

[2] Specifically, Kousa would pay a three percent (3%) commission to ATS for all ocean carriage and a seven percent (7%) commission for port activities and charges.

August 23, 2012 and requested a warrant of arrest and a writ of maritime attachment and garnishment against certain cargo in the Port of Baltimore. After Kousa filed security with this Court, the cargo was released. Ultimately, Kousa filed counterclaims for fraudulent inducement of contract, reformation, breach of contract, intentional misrepresentation/ fraud, tortious interference with contractual relations, and tortious interference with prospective advantage.

ATS moved to dismiss Kousa's counterclaims and subsequently moved for summary judgment on both its own claims and all of Kousa's counterclaims. By Memorandum Opinion and separate Order dated April 10, 2014, this Court denied ATS's Motion for Dismiss but granted in part and denied in part ATS's Motion for Summary Judgment. Specifically, this Court denied the motion with respect to ATS's claim for breach of contract. Summary judgment was also denied to ATS as a counter-defendant with respect to Kousa's counterclaims for breach of contract for the arrest and/or attachment of its property (Count IV) as well as fraud in the inducement (Count I) and fraud (Count V) to the extent that those claims relate to the later shipments not covered by the 2008 and 2009 Contracts of Affreightment ("COAs"). However, summary judgment was granted to ATS as a counter-defendant on Kousa's counterclaims for reformation (Count II), breach of contract with respect to alleged over-charging (Count III), and fraud in the inducement and fraud (Counts I and V) with respect to the 2008 and 2009 COAs.[3]

On April 17, 2014, Kousa filed its Motion for Reconsideration (ECF No. 145). In the motion, Kousa argues that is has discovered new evidence tending to show that ATS

---

[3] Kousa's counterclaims for tortious interference with contract (Count VI) and tortious interference with prospective business advantage (Count VII) were dismissed without prejudice by consent of Kousa.

planned or, in fact, already had negotiated for lower rates with PACC before ATS entered into the 2008 and 2009 Contracts of Affreightment with Kousa.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration." Instead, Rule 59(e) authorizes a district court to alter, amend, or vacate a prior judgment, and Rule 60 provides for relief from judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011). As this Court recently explained in *Cross v. Fleet Reserve Ass'n Pension Plan*, Civ. No. WDQ-05-0001, 2010 WL 3609530, at *2 (D. Md. Sept. 14, 2010):

> A party may move to alter or amend a judgment under Rule 59(e), or for relief from a judgment under Rule 60(b). *See* Fed. R. Civ. P. 59(e) & 60(b). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992).

(footnote omitted). This Court entered its Memorandum Opinion and Order on ATS's Motion for Summary Judgment on April 10, 2014. Kousa filed the pending motion on April 17, 2014 pursuant to Rule 59(e), and ATS has not disputed that Rule 59(e) controls. Indeed, Rule 59(e) is the proper legal framework for analyzing Kousa's Motion.

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final[4] judgment may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

---

[4] Rule 59(e) applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991).

5

available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g., Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). Such motions do not authorize a "game of hopscotch," in which parties switch from one legal theory to another "like a bee in search of honey." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). In other words, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Wright, *et al.*, *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995)). Where a party presents newly discovered evidence in support of its Rule 59(e) motion, it "must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Id.* (internal citations and quotation marks omitted). Where a party seeks reconsideration on the basis of manifest error, the earlier decision cannot be "'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, Nos. 92-2355, 92-2437, 1995 WL 520978 at *5 n.6 (4th Cir. Sept. 5, 1995)). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted).

ANALYSIS

In this Court's April 10, 2014, Memorandum Opinion (ECF No. 133) on ATS's Motion for Summary Judgment, this Court dismissed Kousa's counterclaim for fraudulent inducement. Specifically, this Court noted:

> Kousa has provided no evidence to support its contention that ATS had negotiated lower rates and/or a commission with PACC before the contracts between ATS and Kousa were formalized. Moreover, there is no evidence that ATS originally planned or intended to renegotiate its contract with PACC when the rates set in the 2008 and 2009 COAs were negotiated and agreed upon. Accordingly, Kousa has not generated a question of material fact regarding its fraudulent inducement claims with respect to the 2008 and 2009 COAs.

Mem. Op., ECF No. 133, at 9-10. In a footnote, this Court further explained its reasoning as it related to the evidence before this Court at that time:

> ATS and PACC eventually renegotiated the rates for both the 2008 and 2009 COAs. However, ADDENDUM NO. 1 (which affected the 2008 COA) was not dated. The stated effective date of that amendment was the voyage 165x Alkaid, which Kousa asserts was the first voyage subject to the 2008 COA. No evidence has been offered regarding the date of that voyage, and there is affirmative evidence that the amendment to the contract occurred after the 2008 COA was executed. See Def.'s Resp. Mot. Summ. J. Ex N 101:12-120 (deposition testimony of Joseph Goering stating that amendment was not disclosed to Kousa because the "contract was already mutually executed").
> 
> With respect to the 2009 COA, the evidence clearly demonstrates that the amendments at question occurred after the original COA between ATS and Kousa was signed. Specifically, ADDENDUM NO. 2 to the contract between ATS and PACC (which is the first amendment that the parties have identified with respect to the 2009 COA) states that ATS had been unable to meet its obligations "since January 2009 due to the global financial crisis." See Def. Resp. Mot. Summ. J. Ex H.
> 
> Because the amendments to ATS's agreement with PACC were not made until after the 2008 and 2009 COAs were executed, there was nothing false about the statements that Kousa was receiving the best rates available at the time.

*Id.* at 10 n.5.

In its Motion for Reconsideration, Kousa argues that newly discovered evidence warrants reconsideration of this Court's conclusion with respect to the 2008 and 2009 COAs. Kousa attached three exhibits to its motion—exhibits that Kousa contends constitute new evidence of ATS's efforts and/or plan to negotiate lower rates between itself and PACC before ATS entered into the COAs. Exhibit 1 purports to be an email from CK Than to Jimmy Tham of PACC. Attached was a fully executed copy of "ADDENDUM NO. 1" to the "the "CONTRACT OF AFFREIGHTMENT Dated 16 December, 2007 PACC Container Line Pte Ltd / ATS International Service, Inc." Kousa argues these documents demonstrate that ATS had already negotiated the lower rate for itself before the 2008 COA went into effect, therefore indicating that Kousa was fraudulently induced into entering the 2008 COA.

Exhibit 2 appears to be an email from Jimmy Tham of PACC to Joe Goering and CK Than, dated March 14, 2008, involving negotiations for debit notes and reduced rates. Kousa argues that, because this negotiation occurred before Kousa and ATS entered the 2009 COAs on May 21, 2008, it was fraudulently induced into entering the 2009 COA.

Finally, Exhibit 3 is titled "ADDENDUM NO. 1 to the CONTRACT OF AFFREIGTMENT FOR 2009 Dated 13th May, 2008 PACC Container Line Pte Ltd / ATS International Service, Inc." Kousa argues that this document was not previously disclosed and confirms that PACC and ATS negotiated lower rates as discussed in the Exhibit 2 email.

In sum, Kousa argues that these three documents, had they been available at the time this Court issued its April 10 Memorandum Opinion, would have generated questions of material fact sufficient to avoid summary judgment on its fraudulent inducement

counterclaim. Counsel for ATS recognized at the hearing that the evidence, if admissible, would raise a question of material fact; nevertheless, ATS has strongly opposed Kousa's motion for two basic reasons. First, ATS contends that relief pursuant to Rule 59(e) is inappropriate under the circumstances. Second, ATS argues that all three exhibits are unauthenticated hearsay.

## I.     Propriety of Kousa's Motion under Rule 59(e)

ATS argues that the general disfavor afforded to motions for reconsideration should persuade this Court to deny Kousa's motion. In addition, ATS suggests that the exhibits relied upon by Kousa are not, in fact, "newly discovered" and were available to Kousa when the Motion for Summary Judgment was litigated.[5] Despite ATS's protestations, this Court finds no reason to disbelieve Kousa's repeated assertion that the evidence at issue was not uncovered until several days after this Court's April 10, 2014 Memorandum Opinion. Specifically, Kousa has provided affidavits from both Ricky Seung and CK Than indicating that that the documents were not received until April 13, 2014. *See* Def.'s Reply Exs. 1, 2,

---

[5] Rather than directly attacking the veracity of Kousa's representations, ATS attempts to generate suspicion accordingly:

> The deposition of Mr. Anderson was scheduled two times during discovery, first for 1/24/2014 and then for 2/7/2014. At Kousa's request, both were cancelled and another deposition taken on the indicated date instead. On 1/24, Kousa took the deposition of Mr. Andrew Weyland. On 2/7, the last day of discovery, the second corporate designee deposition of ATSI was substituted with ATSI agreeing to produce Mr. Anderson notwithstanding the close of discovery generally as was memorialized in the Joint Status Report. The most curious thing is that Mr. Anderson, as all prior discovery (and now his deposition too) has established, had no role whatsoever in the negotiations of any of the COA between Kousa and ATSI and/or ATSI and PACC and did not interact with Kousa, PACC or Mr. Than of LAP. Accordingly, how and why Mr. Than's purported email was produced to "prepare" for Mr. Anderson's post discovery deposition is something of a mystery if not an out-right fiction. That Kousa appends no affidavit to support such a story is telling. Indeed, why is there a cover email from Than to Seung in Exhibit 2 but no such cover for Exhibit 1? Could it be that the 12/19/2007 email was long in the possession of Kousa—or at least before its response to the motion for summary judgment?

Pl.'s Resp. 6 n..5, ECF No. 153.

ECF Nos. 158-1, 158-2. Accordingly, this Court finds that Kousa has properly raised these issues through its Motion for Reconsideration pursuant to Rule 59(e).

## II.     Effect of Kousa's "Newly Discovered Evidence"

ATS next argues that Kousa's exhibits are unauthenticated hearsay. "A party seeking to admit an exhibit need only make a prima facie showing that it is what he or she claims it to be. This is not a particularly high barrier to overcome." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542 (D.Md.2007). Under Federal Rule of Evidence 901(b)(4), a piece of evidence may authenticated by evidence of "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." FED. R. EVID. 901(b)(4). Additionally, Rule 902(7) provides that evidence requires no extrinsic evidence of authenticity and, therefore, is self-authenticating when the evidence includes "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control." FED. R. EVID. 902(7). As explained in *Lorraine v. Markel American Insurance Co.*, 241 F.R.D. 534 (D. Md. 2007), business emails containing information showing the origin of the transmission and identifying the employer-company may be sufficient to authenticate an email under Rule 902(7). *See id.* at 554 (quoting 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 900.07[3][c]).

This Court is satisfied that Exhibits 1 and 2—the emails—are authentic. Both emails identify the recipients and senders and display the email addresses of both CK Than and Jimmy Tham. More importantly, the Affidavit of CK Than identifies Exhibit 1 as an email sent by CK Than and Exhibit 2 as an email forwarded to Ricky Seung with a proceeding

email received from Jimmy Tham. *See* Aff. CK Than ¶¶ 3-4, ECF No. 158-5. Accordingly, Exhibits 1 and 2 have met the requirements for authenticity.

Moreover, this Court finds that Exhibit 3—the addendum to the contract between PACC and ATS—is also authentic. The document contains corporate seals or logos of both PACC and ATS. Moreover, the document closely resembles ADDENDUM NO. 1 to the "CONTRACT OF AFFREIGHMENT Date 16 December, 2007 PACC Container Line Pte Ltd / ATS International Services, Inc.," which was at issue on the original Motion for Summary Judgment. Accordingly, this Court finds that Exhibit 3 is authentic under Rule 901 due to the distinctive characteristics of the document and its many similarities to the other documents in this case.

Next, ATS challenges the evidence under the hearsay rules. Under Rule 801, hearsay is an out-of-court statement offered to "prove the truth of the matters asserted." FED. R. EVID. 801(c). Thus, statements offered for other purposes are not hearsay. Exhibits 1 and 2 are not hearsay because they are offered to demonstrate the date of communication rather than to prove the truth of the statements contained therein. Nor is Exhibit 3 hearsay, because the document is a signed writing of independent legal significant and, therefore, is a non-hearsay verbal act. *See Lorraine*, 241 F.R.D. at 566.

CONCLUSION

For the reasons stated above, Defendant Kousa International, LLC's Motion for Reconsideration is GRANTED. No separate order will follow, however, as the motion was already granted as part of this Court's Pretrial Order (ECF No. 164).


Dated:     May 1, 2014                    ____/s/_____
                                          Richard D. Bennett
                                          United States District Judge